# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 19, 2011          Decided January 17, 2012

No. 09-3012

UNITED STATES OF AMERICA,
APPELLEE

v.

ROGER S. LATHERN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cr-00031-1)

*Gary M. Sidell*, appointed by the court, argued the cause and filed the briefs for appellant.

*John L. Hill*, Assistant U.S. Attorney, argued the cause *pro hac vice* for appellee. On the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *John P. Mannarino*, *T. Anthony Quinn*, and *Ann K.H. Simon*, Assistant U.S. Attorneys.

Before: HENDERSON, TATEL, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Roger Lathern appeals the district court's dismissal of his habeas petition seeking relief for ineffective assistance of counsel. For the reasons set forth below, we affirm the judgment of the district court.

I

On the night of December 29, 2004, in Washington, D.C., police responded to a call from two women who had seen two men carrying firearms exit a car together and walk into a nearby alley. While questioning the women at the scene, a gunshot was heard. The police cordoned off the alley and apprehended Roger Lathern and Rahmaan Ward. A search of the alley discovered a 9-millimeter pistol, a shotgun, and a single spent shell. *United States v. Lathern*, 488 F.3d 1043, 1044-45 (D.C. Cir. 2007).

Lathern and Ward were each charged with illegally possessing a firearm as a convicted felon. Lathern hired an attorney, Gene Johnson, and Ward was assigned a public defender, Anthony Axam. Before trial, the prosecutor verbally offered a seventy-month plea deal to both defendants through their attorneys. Both attorneys told the prosecutor their clients were not interested. On August 24, 2005, a jury convicted Lathern and hung on the charges against Ward, who later pled guilty.

During sentencing, Lathern protested that his attorney had never told him of the offer, and that he "might have" pled guilty had he known of it. Johnson countered that he had told Lathern of the offer, but that Lathern had instructed him to turn it down. The district court opined that there was nothing that could be done about the matter at that point, and that Lathern could tell his new attorney to raise this issue on

appeal. The district court then sentenced Lathern to ninety-seven months in prison, the statutory maximum. Lathern appealed his sentence but failed to include among his arguments any reference to the plea. We affirmed his conviction in 2007. *Lathern*, 488 F.3d at 1044.

Lathern first claimed that Johnson's alleged failure to tell him of the proffered plea amounted to ineffective assistance of counsel in a pro se petition for a writ of habeas corpus filed with the district court in January 2008. At his habeas hearing in January 2009, Lathern put on three witnesses: himself; his co-defendant, Ward; and Ward's lawyer, Axam. Lathern testified that he first heard of the plea offer after his conviction, when he asked Johnson why the prosecutor had not made an offer. According to Lathern, Johnson told him, "They did offer you a plea, but whatever it was, we wasn't taking it." Tr. at 49, Jan. 7, 2009. Ward testified that he met with Lathern and Johnson to discuss his own plea deal, but that Johnson told him not to take it because "[Johnson] was this, quote/unquote, superlawyer who didn't take cops" and would get them both off. *Id.* at 32. Axam testified that he never discussed any plea deal with Johnson. In response, the government called only Johnson, who testified that he and Lathern engaged in "constant banter" about whether to plead guilty, but that Lathern directed him to turn down the offer, stating, "If I had wanted to plead guilty, I would not have retained you. I could have done that with my public defender." *Id.* at 94-96; Tr. at 20, Jan. 27, 2009. Johnson also testified that he had handled about 3,500 criminal cases in his career and that only about 225 (6%) of them had gone to trial. Tr. at 91, Jan. 7, 2009.

The district court judge asked Lathern's habeas counsel, "[H]ow do I, if to any degree, consider my historical experience with Mr. Johnson? Because what is being said [by

Lathern] is totally inconsistent with my long-term professional association with [Johnson] both on [the] Superior Court and this court." Tr. at 48, Jan. 27, 2009. The judge stated that in his twenty-five years of experience with Johnson, he could recall only one other case in which Johnson went to trial. According to the judge, Lathern's argument that Johnson avoided an offered plea was, "totally inconsistent with my historical experience with [Johnson] in regards to how he seeks to resolve cases on behalf of his clients . . . [because] the overwhelming number of cases that he's had with me, they have resolved themselves by a plea." *Id.* at 48-50. The court also noted that while attorneys Axam and Johnson differed on what they said to each other before trial, Axam never testified that Johnson did not tell Lathern of the plea proposal. *Id.* at 67. Finding Johnson more credible than Lathern, the district court dismissed the petition.

With no automatic right of appeal, 28 U.S.C. § 2253(c), Lathern sought a certificate of appealability which the district court denied. We reversed the district court and take jurisdiction to hear his appeal under 28 U.S.C. § 1291.

II

Our analysis of Lathern's claim of ineffective assistance of counsel is controlled by *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed, a petitioner must show both that his counsel's performance "fell below an objective standard of reasonableness" and that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687-88. Crediting Johnson's testimony that he told Lathern of the plea offer over Lathern's claim that he did not, the district court concluded that Lathern had failed to show any error by Johnson.

Lathern argues that conclusion was unlawfully based on extra-record information: the district court's stated experience with Johnson's decided preference for pleas over trials. We review this argument for plain error because Lathern said nothing about it to the district court. *See United States v. Keleta*, 552 F.3d 861, 867 (D.C. Cir. 2009). Lathern cannot show plain error without establishing that he was prejudiced by any mistake. *See United States v. Merlos*, 8 F.3d 48, 50 (D.C. Cir. 1993). Quite apart from whether the district court's statement was in error, it certainly caused Lathern no harm. It is clear from the record that the district court would have believed Johnson over Lathern anyway. The district court identified ample reasons beyond its experience with Johnson to find him more credible than Lathern, including the length of Johnson's time practicing law, Johnson's ethical and legal obligations to convey a plea deal to his client, his forthrightness in admitting a plea offer had been made, the specificity with which he recounted the details of his communications about the plea deal, the unlikelihood of an attorney committing perjury, and Lathern's three prior felony convictions. Tr. at 62-66, Jan. 27, 2009. In any event, Johnson's preference for pleas over trials was part of the hearing record, Johnson having testified that he resolved almost all of his cases throughout his thirty years in private practice career by guilty pleas. Tr. at 91, Jan. 7, 2009.

Lathern next argues that no reasonable fact-finder could have credited Johnson's testimony. We have long held that,

> [unless] [d]ocuments or objective evidence . . . contradict the witness' story; or the story itself [is] so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it . . . [the] decision to credit the testimony of one of two or more witnesses . . . can virtually never be clear error.

*Bishopp v. District of Columbia*, 788 F.2d 781, 785 (D.C. Cir. 1986) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)) (internal quotation marks omitted). This approach reflects the deference due to trial court judges who can observe firsthand the "variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* (quoting *Bessemer City*, 470 U.S. at 575) (emphasis omitted). Here, Johnson's testimony was coherent and plausible, and there is nothing indicating that it was "internally inconsistent." There were no "documents or objective evidence" to contradict his story. If anything, the plausibility of Lathern's testimony was called into question by his own witness, Ward, who claimed that Johnson and Lathern discussed the plea deal the prosecutor had offered Ward. Lathern asks us to believe that when he discussed his co-defendant's plea agreement with Johnson, he never asked Johnson whether he had received such a deal as well. That seems an unlikely inference to draw.

Lathern also argues that there is an "inherent inconsistency" in Johnson's statement that he believed that Lathern had a good chance of winning at trial but that he also repeatedly discussed the possibility of a plea deal with the prosecution. We disagree. It is entirely plausible to us that an attorney would pursue every available option for his client, including a possible plea deal, even if he believed there was a strong chance of winning at trial. Given that this Court has held that such credibility determinations "can virtually never be clear error," this is not a close call. *Id.* The district court had ample reasons for finding Johnson more credible than Lathern.

## III

We conclude that the district court did not err in finding that Johnson told Lathern of the plea offer, and therefore that Johnson made no error on which to base a *Strickland* claim.

The judgment of the district court is

*Affirmed*.